UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| Plaintiff,  ) | Action No. 5:12-CR-102-JMH |
| ) | |
| v.  ) | |
| ) | |
| ZAFAR I. NASIR,  ) | |
| SOHA ALJENABI,  ) | |
| ASIM MALIK,  ) | |
| NAWAZ KHAN, and  ) | |
| SETH J. JOHNSTON.  ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendants.  ) | |
| ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on a Motion to Exclude Government's Expert Opinions Pursuant to *Daubert* and Federal Rules of Evidence filed by Seth J. Johnston.[1] [DE 222]. The Government responded. [DE 233]. With the Court's permission [DE 250], the Government [DE 295] and Johnston [DE 305] filed supplemental briefs following the hearing held on July 11, 2013.  This matter is now ripe for review.

---

[1] Johnston's Motion was joined by Asim Malik [DE 226].  While the Government indicated in its Response [DE 295] that Zafar Nasir, Soha Aljenabi, and Nawaz Khan also joined in the motion, this Court cannot find any assertion in the record by these defendants that they joined this motion.  However, by their participation in the hearing in this matter, the Court understands that these Defendants have, in effect, joined the motion.  If the Court has misunderstood Defendants' intentions, then Defendants have seven (7) days in which to file a notice in the record disclaiming an intention to join this motion.

Defendants have been charged with, *inter alia*, possession with intent to distribute and a conspiracy to distribute synthetic marijuana containing JWH-122 and AM 2201, alleged analogues of the Schedule I controlled substance JWH-018. Congress enacted the Controlled Substance Analogue Enforcement Act of 1986 (CSAEA) to keep up with rapidly progressing drug technologies and to target the distribution of so-called "designer drugs." *United States v. Washam*, 312 F.3d 926, 933 (8th Cir. 2002). Under 21 U.S.C. § 841(a)(1), it is a criminal offense to knowingly or intentionally distribute or dispense a controlled substance or to possess with an intent to distribute or dispense a controlled substance. Under 21 U.S.C. § 813, a "controlled substance analogue" is treated as a controlled substance to the extent that it is intended for human consumption.

The statutory definition of a controlled substance analogue is:

   A substance—

   i. the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

   ii. which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

2

>    iii.   with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

Conviction under the controlled substance analogue statute does not require that the experts agree that a substance meets this definition. *Washam*, 312 F.3d at 931 (citing *United States v. McKinney*, 79 F.3d 105, 108 (8th Cir. 1996)).

Michelle Walker, Ph.D., a pharmacologist employed by the Drug Enforcement Agency (DEA), testified [DE 222-2] that AM 2201 has similar pharmacological effects to the Schedule I controlled substance JWH-018.[2]  21 U.S.C. § 802(32)(A)(ii). The parties agree that Dr. Walker's testimony is relevant. The issue before this Court is whether Dr. Walker's testimony regarding the second prong of the controlled substance analogue definition, specifically

---

[2]   Trudy Amin, Ph.D., a chemist employed by the DEA, also provided an affidavit[DE 222-3] in which she concluded that JWH-122 and JWH-018 share a substantially similar chemical structure. At the hearing, Johnston clarified that he was only challenging Dr. Walker's testimony about the similarities in pharmacological effects between AM 2201 and JWH-018, and not the Government's experts' opinions regarding the chemical similarities between the substances. Accordingly, relying upon agreement of Defendants, the Government did not call Dr. Amin to testify at the hearing.

whether AM 2201 "has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of" JWH-018, is sufficiently reliable to be admissible. 21 U.S.C. § 802(32)(A)(ii).  At the hearing, Dr. Walker testified that based on pharmacological data, receptor binding and activation studies on AM 2201, and drug discrimination studies on AM 2201 involving rodents, it was her opinion that AM 2201 was substantially similar pharmacologically and in physiological effect to JWH-018. [DE 291 at 1307].[3]

Through his expert, Craig Rush, Ph.D., who is a psychologist and behavioral pharmacologist teaching at the University of Kentucky, Johnston challenges Dr. Walker's opinion on the bases that (1) the studies on which Dr. Walker relies are not reliable and are not sufficiently peer-reviewed to be admissible and (2) that Dr. Walker's opinion does not rely on studies involving the effects of AM 2201 and JWH-018 on humans, and, therefore, is not reliable.

---

[3]   In their briefs, the Government and Johnston cited to a copy of the transcript of the hearing that was deleted and re-filed by the clerk's office.  The transcripts are identical, aside from the page identification numbers assigned on the docket.  While the citations in the parties' briefs do not correspond to the record, this Memorandum Opinion and Order cites to the correct page identification numbers for the transcript which is currently in the record.

"District courts have broad latitude in deciding whether to admit expert testimony under *Daubert*. . ." *United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1973)). This Court is required to determine whether the opinion rests upon a reliable foundation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529—30 (6th Cir. 2008). "Under Rule 702, an expert may offer scientific or technical testimony if the court finds the witness is qualified by knowledge, skill, experience, training, or education; that the testimony is relevant; and that the testimony is reliable." *United States v. Stafford*, 721 F.3d 380, 393 (6th Cir. 2013) (citations omitted) (internal quotation marks omitted).

Johnston does not challenge Dr. Walker's qualifications or the relevance of her testimony but, instead, argues that her conclusion is inadmissible as a result of its reliability. *Daubert* provided several factors for courts to consider in its role as gatekeeper, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)(citing *Daubert*, 509 U.S. at 593—94).

Although Johnston originally challenged the validity of the receptor binding and activations studies regarding AM 2201, both

5

Dr. Walker and Dr. Rush testified that these studies are a commonly accepted methodology. [DE 291 at 1286, 1368—69]. Receptor binding and activation constitutes a basic tenet of the field of pharmacology. [DE 291 at 1281—86]. The ligand binds to a particular receptor, thus activating a particular chain reaction resulting in physiological and psychoactive effects. [DE 291 at 1281—86]. In the case of marijuana, delta-9-THC is the primary chemical that mediates its psychoactive effects. [DE 291 at 1281]. This chemical, delta-9-THC binds to CB1, which is one of the two cannabinoid receptors in the body. [DE 291 at 1282]. The Schedule I substance at issue in this case, JWH-018, also binds to CB1. [DE 291 at 1282]. The chemical structure of AM 2201 is similar to Schedule I substance JWH-018, a fact which Johnston does not contend. Dr. Walker testified that the receptive binding studies and activation studies comparing JWH-018 and AM 2201 show that both substances also have similar binding rates, or binding affinity, with the CB1 receptors, and that AM 2201 activates the CB1 receptor. [DE 291 at 1288—93; Plaintiff's Exhibit 1, Walker PowerPoint Presentation, at slides 6, 7]. Dr. Rush agreed that he did not take issue with the methodology underlying receptor binding and activation studies and that those type of studies are widely accepted in the field of pharmacology. [DE 291 at 1168—69].

6

Johnston, however, challenges the binding affinity and activation studies for AM 2201 because these particular studies were not independently reviewed by an outside lab prior to publication. Dr. Walker testified that the studies of the publication at issue are internally peer reviewed prior to publication. [DE 291 at 1176—83]. This Court need only determine the admissibility of the evidence, it is for the jury to determine what weight to give the evidence. *Stafford*, 721 F.3d at 394. "The court's focus is 'solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

Thus, with respect to the binding affinity and receptor activation studies, this Court finds that the methodology underlying those studies is sufficiently reliable to allow Dr. Walker's testimony to be admitted at trial. Publication in a peer-reviewed journal is not required for admissibility. *United States v. Bonds*, 12 F.3d 540, 564 (6th Cir. 1993). To the extent that these studies were subject to internal, rather than external peer review, that information relates more to the weight given to the evidence and will not prevent the evidence from admission in this instance. *Id.* ("Any shortcomings in the peer review of the FBI's procedures are not sufficient to overcome the other strong evidence

7

that the FBI's principles and procedures were both generally accepted and scientifically valid.").

Next, Johnston challenges the admissibility of Dr. Walker's testimony regarding the physiological effects of AM 2201 on the human body. Relying on drug discrimination studies in rodents, Dr. Walker testified that the physiological effects of AM 2201 are similar to that of JWH-018 and delta-9-THC. [DE 291 at 1300—05]. She further testified that drug discrimination studies in rodents are highly predictive of the effects of drugs in humans. [DE 291 at 1306].

Johnston also challenges the admissibility of these drug discrimination studies on the basis that they were not peer reviewed prior to publication. Similarly to the binding affinity and receptor activation studies, the drug discrimination studies at issue were performed by groups that are experienced in the drug abuse field, and internally peer-reviewed their work prior to publication. [DE 291 at 1306—08]. Dr. Rush criticized the lack of pre-publication external peer review conducted on the articles relied on by Dr. Walker. [DE 291 at 1359—61]. However, such peer review "is not a *sine qua non* of admissibility." *Bonds,* 12 F.3d at 564 (citing *Daubert*, 509 U.S. at 593). As Dr. Walker stated, the studies she relied upon were "peer reviewed internally," in that "the scientists who conduct the studies, they write up their report

8

that's reviewed by them before they submit it to [the National Institute on Drug Abuse]." [DE 291 at 1343]. As Dr. Walker explained, "NIDA then does its own review, and they have a behavioral scientist at NIDA who is over those contracts," and that person "determines whether the data is sufficient in order for it to be finalized or not." [DE 291 at 1343]. Dr. Walker also stated that "at this point . . . there are no studies that have been published in peer review journals on AM 2201 as far as the drug discrimination data is concerned." [DE 291 at 1344].

While Dr. Rush testified that certain drug discrimination studies are not predictive of the effects of a particular drug on the human body [DE 291 at 1356–58], he did not offer any testimony suggesting that drug discrimination studies are not reliable or lack scientific validity. In other words, Dr. Rush did not attack the methodology of the study itself. He said of the drug discrimination studies that "[w]hat they did was rigorous, but they didn't go far enough." [DE 291 at 1369]. This criticism is ample fodder for cross-examination of a witness, but is not sufficient to warrant exclusion of the testimony itself.

"Only when a theory or procedure does not have the acceptance of most of the pertinent scientific community, and in fact a substantial part of the scientific community disfavors the principle or procedure, will it not be generally accepted." *Bonds*,

12 F.3d at 562 (citations omitted). The Government has sufficiently demonstrated that the reasoning and methodology underlying Dr. Walker's testimony is scientifically valid and may be properly applied to the facts in issue. *Daubert,* 509 U.S. at 592—93.

Dr. Rush, an associate editor of *Drug and Alcohol Dependence*, noted that the journal recently published a study analyzing the results of an anonymous online survey of individuals who had used synthetic and natural cannabis, titled "*Synthetic cannabis: A comparison of patterns of use and effect profile with natural cannabis in a large global sample.*" [DE 291 at 1362—63; DE 305-1]. That study determined that synthetic cannabis produced "less pleasurable effects and more dysphoric effects, unpleasant effects" than natural cannabis, or marijuana. [DE 291 at 1363; DE 305-1]. However, the study cited by Dr. Rush did not differentiate between synthetic cannabinoids. [DE 291 at 1369—70; DE 305-1]. In other words, there is no way to know if the drugs used by the survey respondents were JWH-018, AM 2201, or any of the myriad of other substances referred to under the general term "synthetic marijuana." Moreover, AM 2201 is not an alleged analogue of delta-9-THC, or marijuana, but is an alleged analogue of the Schedule I substance JWH-018, which was not a comparative in the study

referenced by Dr. Rush.  Accordingly, this Court does not consider this study relevant to the issue before it.

For the foregoing reasons,

**IT IS ORDERED** that Motion to Exclude Government's Expert Opinions Pursuant to *Daubert* and Federal Rules of Evidence filed by Seth J. Johnston [DE 222], and joined by Asim Malik, Zafar Nasir, Soha Aljenabi, and Nawaz Khan is **DENIED**.

**IT IS FURTHER ORDERED** that to the extent that Nasir, Aljenabi and Khan did not intend to join the Motion to Exclude Government's Expert Opinions Pursuant to *Daubert* and Federal Rules of Evidence filed by Seth J. Johnston [DE 222], they have seven (7) days in which to file a notice in the record to that effect.  In the absence of any such notice, they will be deemed to have joined in the motion and be held bound by this Court's ruling herein.

This the 25th day of September, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge