```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
|     Plaintiff, | ) | Action No. 5:12-CR-102-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| ZAFAR I. NASIR, | ) | |
| SOHA ALJENABI, | ) | |
| ASIM MALIK, | ) | |
| NAWAZ KHAN, and | ) | |
| SETH J. JOHNSTON, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |

                              \*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the Motion to Dismiss Indictment for the DEA's failure to properly schedule JWH-018 filed by Nawaz Khan [DE 223] and Seth Johnston [DE 219] and joined by Zafar Nasir [DE 228], Soha Aljenabi [DE 224], and Asim Malik [DE 226]. The government has responded [DE 235]. Johnston has filed a reply [DE 238]. Accordingly, this matter is now ripe for review.

Defendants argue that they cannot be held criminally liable for distribution of the synthetic cannabinoids JWH-122 and AM 2201, as analogues of the substance JWH-018 because JWH-018 was not properly scheduled as a controlled substance by the Drug Enforcement Administration (DEA). Specifically, Defendants concede that the DEA followed the proper procedures under 21 U.S.C. §

811(h) for the emergency scheduling of JWH-018, but argue that the DEA's failure to comply with the Congressional Review Act (CRA) during that process meant that the rule scheduling JWH-018 did not go into effect.  The Court agrees with the government that the DEA complied with the CRA when JWH-018 was scheduled.  Accordingly, for the reasons fully described herein, Defendants' motion will be denied.

   I.   **Background**

   **a. The Congressional Review Act**

The Small Business Regulatory Enforcement Fairness Act of 1996, 5 U.S.C. §§ 801—808, more commonly known as the Congressional Review Act (CRA), "requires congressional review of agency regulations by directing agencies to submit the rule before it takes effect to the Comptroller General and each house of Congress." *Liesegang v. Sec'y of Veterans Affairs*, 312 F.3d 1368, 1373 (Fed. Cir. 2002). Regulations that qualify as a "major rule" are subject to additional conditions but for non-major rules, such as the one at issue, notice is all that is required.[1]

   **b. The Controlled Substances Act**

The Controlled Substances Act (CSA) classifies into five "schedules" those drugs and other substances that have a "potential

---

[1]   The defendants have not challenged this classification, and the record before this Court does not reveal any basis for considering this rule a "major" rule.

for abuse." 21 U.S.C. § 812(b)(1)-(5). Drugs in Schedule I are subject to the strictest controls, and violations involving Schedule I substances are subject to the most severe penalties because they are believed to present the most serious threat to public safety. *Touby v. United States*, 500 U.S. 160, 162 (1991). Schedule I drugs (1) have "a high potential for abuse," (2) do not have a "currently accepted medical use in treatment in the United States," and (3) lack "accepted safety for use . . . under medical supervision." 21 U.S.C. § 812(b)(1).

The DEA may control a drug by adding it to one of the schedules, transferring it between schedules, or removing a drug from the schedules altogether.[2] 21 U.S.C. §§ 802(5), 811(a). Typically, the DEA controls a substance with a potential for abuse by making "the findings prescribed by [21 U.S.C. § 812(b)] for the schedule in which [the] drug is to be placed[.]" 21 U.S.C. § 811(a)(1).  Prior to initiating rulemaking, the DEA must gather "the necessary data" and request a scientific and medical evaluation and recommendation as to whether the drug should be controlled from the Secretary of the U.S. Department of Health and Human Services.  21 U.S.C. § 811(b).  The Secretary's

---

[2]   The Attorney General delegated the duties described in 21 U.S.C. § 811(a) to the Administrator of the Drug Enforcement Administration in 28 C.F.R. § 0.100.  *See also Touby v. United States,* 500 U.S. 160 (1991).

3

recommendations are binding on the DEA with respect to scientific and medical matters. *Id.* Additionally, the DEA must also consider the eight factors listed in § 811(c), and comply with the notice and hearing provisions of the Administrative Procedure Act (APA).

The Dangerous Drug Diversion Control Act of 1984, Pub. L. 98-73, 98 Stat. 1837, amended the CSA to add the temporary scheduling provision found at 21 U.S.C. § 811(h) in order to make the process more responsive to the emerging "designer" drug market by providing a temporary scheduling provision, see *Touby*, 500 U.S. at 163.

To temporarily schedule a drug on an emergency basis pursuant to § 811(h), the DEA must find that it is necessary to temporarily schedule a substance in schedule I "to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h)(1). Instead of the eight factors required for permanent scheduling under the standard § 811(c) rulemaking procedures, § 811(h)(3) only requires the DEA to consider three factors before reaching an "imminent hazard" determination, specifically: (1) the drug's "history and current pattern of abuse;" (2) "[t]he scope, duration, and significance of abuse;" and (3) "[w]hat, if any, risk there is to the public health." In addition, the DEA considers "actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." *Id.* § 811(c)(4), (5), (6); *id.* § 811(h)(3). "Rather than comply with the APA notice-and-hearing provisions, the

4

Attorney General need provide only a 30-day notice of the proposed scheduling in the Federal Register." *Touby*, 500 U.S. at 163.  The DEA scheduled JWH-018 under this emergency scheduling authority. *See* Notice of Intent to Temporarily Schedule, 75 Fed. Reg. 71635, [DE 235-1 (DEA Letter to HHS); DE 235-2 (HHS Letter responding to DEA].

On March 1, 2011, the DEA published a Final Order temporarily placing five synthetic cannabinoids in Schedule I on an emergency basis for a period of one year. *See* Final Order, 76 Fed. Reg. 11075 (Mar. 1, 2011); 21 U.S.C. § 811(h). In connection with this Order, the DEA invoked an exception to the procedural requirements of the Congressional Review Act (CRA) in order to avoid any delay. *See* 5 U.S.C. § 808(2).

On February 29, 2012, DEA published an order extending the temporary scheduling of JWH-018 to August 29, 2012, or until the final rulemaking proceedings were complete, whichever came first. *See* Final Rule, 77 Fed. Reg. 12201 (Feb. 29, 2012). On July 9, 2012, President Barack Obama signed the Synthetic Drug Abuse Prevention Act of 2012, Pub. L. No. 112-144, into law.  The Act bans several specific synthetic cannabinoids (including JWH-018) and an entire class of "cannabimimetic agents" as Schedule I substances, thereby obviating the need for the DEA to publish a Final Rule.

5

The indictment in this matter covers activity involving JWH-018 analogues during the time span of fall, 2011 to October, 2012, in other words, during the time period that JWH-018 was included on Schedule I through the temporary scheduling authority described above.

## II. Analysis

The issue, Defendants argue, is whether "the DEA's failure to notify Congress and the Comptroller General before issuing the March 1, 2011 order adding JWH-018 to Schedule I pursuant to 21 U.S.C. § 811(h) precludes prosecution of this defendant with regard to the alleged conspiracy to distribute JWH-122 and AM 2201, as analogues of JWH-018." [DE 219 at #775.]  To be clear, the defendants do not challenge the DEA's compliance with the temporary scheduling process set forth in 21 U.S.C. § 811(h), only the DEA's compliance with the notifications required by the CRA.

The government contends, first, that the DEA did notify Congress and the Comptroller General prior to issuing the March 1, 2011 order as required by the CRA, under 5 U.S.C. 801 (a)(1)(A); second, that the DEA properly invoked the "good cause" exemption to compliance with the CRA under 5 U.S.C. § 808(2); and, finally, that the CRA, specifically, 5 U.S.C. § 805, bars judicial review of an agency's compliance with the CRA.  This Court agrees that the DEA clearly provided notice to Congress and the Comptroller General as

6

required under the CRA, thus, this Court need not reach the government's remaining arguments.

### A. Compliance with CRA

Pursuant to 5 U.S.C. § 801 (a)(1)(A), prior to taking effect, the federal agency promulgating the rule shall provide to each House of Congress and to the Comptroller General a report with: (1) a copy of the rule; (2) a concise general statement relating to the rule, including whether it is a major rule; and (3) the proposed effective date of the rule. 5 U.S.C. § 801(a)(1)(A). The CRA makes distinction based on whether a rule is a "major" rule, as defined in 5 U.S.C. § 804(2), or a "non-major" rule. Major rules are subjected to additional procedures and a delay in the effective date of the rule, as proscribed in the CRA. The DEA designated the rule at issue as a "non-major" rule. In the case of a "non-major" rule, as here, the rule "shall take effect as otherwise provided by law after submission to Congress." 5 U.S.C. § 801(4).

On or about November 24, 2010, the DEA published it's Notice of Intent, dated November 15, 2010, to place JWH-018 on Schedule I under the temporary scheduling provisions. The Notice of Intent included a statement regarding the CRA in which the DEA noted that this was not a major rule. Subsequently, the DEA published a correction on or about January 13, 2011 in which it clarified that the certification regarding the CRA was prematurely included in the

7

Notice of Intent and struck that paragraph from the Notice of Intent. 76 Fed. Reg. 2287.

The DEA provided its Final Order, dated February 18, 2011, scheduling JWH-018 as a Schedule I drug for publication in the March 1, 2011, Federal Register. With respect to the CRA, the DEA stated that it was invoking the exception to the CRA under 5 U.S.C. § 808(2) because it was making a good faith finding that "notice and public procedure [on the final rule] are impracticable, unnecessary, or contrary to the public interest." Notwithstanding the DEA's reliance on § 808(2), and despite the Defendants' assertions, the DEA still went forward with the requirements of 5 U.S.C. § 801(a)(1)(A). A copy of the rule, a concise statement and the proposed effective date, as required under the CRA, were provided to the President of the Senate on February 28, 2011 [DE 235-3]. The same information under the CRA was provided to the Speaker of the House of Representatives on February 28, 2011. [DE 235-4]; 157 CONG. REC. H2212 (Mar. 31, 2011). The U.S. Government Accountability Office ("GAO") also received a copy on February 28, 2011. [DE 235-5]; also available at www.gao.gov/fedrules/165353.

As explained by defendants, "the DEA merely has to go through the perfunctory steps of presentation to Congress and the Comptroller General to place a substance on the list of controlled

substances" [DE 219-1 at 9], and that is precisely what the DEA did in this instance.

This Court's research revealed that this challenge to the DEA's procedure for temporarily scheduling JWH-018 has only been made in one prior case, *United States v. Reece*, No. 6:12-cr-146 (W.D. La. 2012). The *Reece* Court determined that it was not necessary for the DEA to comply with the CRA, 5 U.S.C. § 801; rather, the DEA's compliance with 21 U.S.C. § 811(h) was sufficient. *United States v. Reece,* No. 6:12-cr-146, 2013 WL 3327913 *8—9 (W.D. La. July 1, 2013). The conclusion in *Reece* may be correct, however, this Court chooses to decide the issue on the most narrow ground possible. Since this Court finds that the DEA complied with the CRA, 5 U.S.C. § 801, there is no need to determine whether the DEA was required to comply with the CRA or not.

### B. Remaining arguments

Although the original motions were based solely on the DEA's alleged noncompliance with the CRA, additional arguments were made in subsequent briefing which this Court will address.

In Johnston's Reply, he argues, for the first time, that the "imminent hazard to public safety" requirement in 811(h), is not adequately defined so as to place any statutory restraint on the

9

DEA.[3]  However, the Supreme Court in *Touby* considered this argument, finding that the "imminent hazard to public safety" requirement passes muster, particularly considered with: the drug's history and current pattern of abuse; the scope, duration, and significance of abuse; and what, if any, risk there is to the public health, as well as the additional factors of actual abuse, diversion of legitimate channels, and clandestine importation, manufacture, or distribution. *Touby*, 500 U.S. at 166.  Johnston also takes issue with the forms presented to Congress and the Comptroller General.  However, his arguments ignore the fact that a copy of the order was provided with the coversheet to which Johnston refers and that the DEA appears to have filled out all of the sections required.

   Johnston further argues that JWH-018 does not present an imminent hazard to public safety, citing to a National Forensic Laboratory Information System (NFLIS) Annual Report demonstrating that JWH-018 was identified in a small number of the total drug reports submitted to laboratories in 2011.  However, this report is not probative of any relevant factor under § 811(h), nor does Johnston cite to any authority making it relevant to the

---

[3] Johnston was the only defendant to file a Reply to the government's Response.  Johnston subsequently filed a supplement to his Reply addressing the government's argument that the CRA determination was not subject to judicial review.

determination. The NFLIS Report is merely a statistical representation of the drugs sent to labs and is not necessarily representative of the drug's history and current pattern of abuse; the scope, duration, and significance of abuse; and what, if any, risk there is to the public health, or additional factors of actual abuse, diversion of legitimate channels, and clandestine importation, manufacture, or distribution, as required for consideration by the DEA in complying with § 811(h).

Johnston also argues that the DEA is unable to invoke the exception to the CRA under § 808(2) because § 811(h) of the CSA requires a 30-day time period between the notice of intent and order. [DE 238 at 4]. This argument is inapplicable. The DEA provided notice to the Secretary of Health and Human Services, and published its notice of intent on November 15, 2010, more than 30 days prior to making the rule scheduling JWH-018 effective consistent with § 811(h) on March 1, 2011. Moreover, as discussed above, the DEA did comply with the CRA.

### C. Judicial review of compliance with CRA

It is beyond cavil that the DEA's temporary scheduling of JWH-018 under the CSA, pursuant to the procedure in 21 U.S.C. § 811, is subject to judicial review. *Touby*, 500 U.S. at 168. However, in its Reply, the government argues that "[n]o determination, finding, action or omission under [the CRA] shall be subject to judicial

11

review." 5 U.S.C. § 805. The government does not argue, as Johnston suggests, that the scheduling of JWH-018 is not subject to review.[4] Instead, this Court understands the United States' position to be that this Court may review the scheduling of JWH-018 by the DEA pursuant to § 811 but the collateral aspect of the DEA's compliance, or lack thereof, with the CRA, i.e. the statute providing for notification to and any necessary action by Congress in reviewing the DEA's rulemaking, is not subject to judicial review under the plain language of § 805.

Despite the plain language of the statute, at least two courts have concluded that judicial review is permitted to determine whether a rule has gone into effect. *Reece*, 2013 WL 3327913 at *8–9 (finding judicial review of temporary scheduling of JWH-018 proper, without significant discussion of 5 U.S.C. § 805); *United States v. Southern Ind. Gas and Elec. Co.*, No. IP99-1962-C-M/S, 2002 WL 31427523 (S.D. Ind. October 24, 2002). In *Southern Indiana*, the Court found that the statute was ambiguous because it was susceptible to two meanings: (1) that "Congress did not intend for courts to have any judicial review of an agency's compliance with the CRA;" or (2) that Congress only intended to foreclose

---

[4] Johnston's Supplemental Reply [DE 254] focuses on this mischaracterization of the government's argument. The government's argument does not go so far as Johnston suggests, and is not a reversal of the United States' position in *Touby*.

review of its own determinations, findings, actions or omissions made under the CRA after a rule is submitted. *Southern Ind.*, 2002 WL 31427523 at *5. In finding that § 805 should be read in keeping with the second interpretation, the *Southern Indiana* court noted that the sponsors of the CRA had stated "the major rule determinations made by the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget are not subject to judicial review. Nor may a court review whether Congress complied with the congressional review procedures in this chapter" but had not indicated a similar prohibition for judicial review of agency compliance with the CRA. *Id.* (quoting 142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996) (joint statement of Senate sponsors)

Nonetheless, the majority of courts considering this issue have noted, at least in passing, that the CRA precludes any judicial review. *See Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (noting that § 805 denies courts the power to void rule on the basis of agency noncompliance with the CRA); *Via Christi Reg. Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) (same); *United States v. Ameren Missouri*, No. 4:11-cv-77-RWS, 2012 WL 2821928, *3—4 (E.D. Mo. July 12, 2012) (noting that the court lacked jurisdiction to review CRA challenge); *Forsyth Memorial Hosp. Inc. v. Sebelius*, 667 F.Supp.2d

13

143, 150 (D.D.C. 2009); *United States v. Amer. Elec. Power Serv. Corp.*, 218 F.Supp.2d 931, 949 (S.D. Ohio 2002) (same).

This Court need not weigh in on this debate in this instance, however, because it is clear from the face of the documents presented and the arguments before it that the DEA complied with the provisions of the CRA. Thus, this Court need look no further—there is no determination, finding, action or omission for this Court to review. *See* 5 U.S.C. § 805.

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss Indictment for the DEA's failure to properly schedule JWH-018 filed by Nawaz Khan [DE 223] and Seth Johnston [DE 219] and joined by Zafar Nasir [DE 228], Soha Aljenabi [DE 224], and Asim Malik [DE 226] is **DENIED**.

This the 25th day of September, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge